```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division
```

| | |
|---|---|
| BMO Harris Bank, N.A.,          ) | |
|                                 ) | |
|     Plaintiff,                  ) | |
|                                 ) | |
|         v.                      ) | 1:14CV1187 (JCC/JFA) |
|                                 ) | |
| TRULAND SYSTEMS CORPORATION,    ) | |
| *et al.*,                       ) | |
|                                 ) | |
|     Defendants.                 ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Movant Allied World National Assurance Company's ("Allied World") Motion to Intervene to Seek an Order Finding the Receivership Stay Does not Apply or, Alternatively, Relief Therefrom. [Dkt. 62.] For the following reasons, the Court will grant Allied World's motion to intervene. The Court will also deny without prejudice Allied World's motion for a ruling on whether the Receivership Stay applies and, if so, relief therefrom.

**I.   Background**

In December 2013, an arbitration demand was filed by Balfour Beatty/DPR/Big-D, a Joint Venture ("BDB"), against Truland, among other entities, as a result of Truland's allegedly faulty installation of electrical equipment at a project known as the Utah Data Center (the "Project"). In response to BDB's claims against

1

it, Truland filed an arbitration demand against Cache Valley Electric Company ("Cache Valley") for contribution and/or indemnification, among other claims.  The two arbitrations were then consolidated.  Arbitration is scheduled to proceed for nine weeks, from June 26 until September 25, 2017.  Opp. [Dkt. 69], ¶ 17.

On July 23, 2014, Truland filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia.  The Bankruptcy Court subsequently appointed a Chapter 7 Trustee.  On September 4, 2014, the Bankruptcy Court issued a Consent Order Granting Emergency Motion for Relief from Stay ("Stay Lift Order"), which had been filed by BMO Harris Bank, N.A. ("BMO").  This Order permitted BMO to take charge of certain property (the "Collateral") and to seek the appointment of a receiver.  On September 9, 2014, pursuant to BMO's request, this Court entered a Receivership Order.  [Dkt. 9.]  The Receivership Order appointed Raymond A. Yancey to take charge of all Receivership Property, which included the Collateral as defined by the Bankruptcy Court's Stay Lift Order.  [*Id.*]  The Receivership Order also stayed any further litigation involving the Receivership Property (the "Receivership Stay").  [*Id.*]

On October 24, 2016, Allied World filed a lawsuit in the United States District Court of Utah against Truland and three other insureds (the "Utah Lawsuit").  That same day, Allied World filed a motion with the Bankruptcy Court to seek relief from the automatic

bankruptcy stay so that it could proceed against Truland in the Utah Lawsuit.  The Bankruptcy Court's subsequent Order granted Allied World's motion in part, lifting the automatic bankruptcy stay after it found that the Trustee of the Debtors' Property "has no interest in [Allied World's] excess insurance policy."  [Dkt. 63, Exh. B.] However, the Bankruptcy Court also ordered Allied World to seek a determination from this Court as to whether its Receivership Order imposed any further limitations on the Utah Lawsuit.

On March 30, 2017, pursuant to the Bankruptcy Court's Order, Allied World filed a Motion to Intervene to Seek an Order Finding the Receivership Stay does not Apply or, Alternatively, Relief Therefrom with this Court.  [Dkt. 62.]  On April 13, 2017, Receiver filed his opposition, [Dkt. 69], to which Allied World replied on April 19, 2017 [Dkt. 76].  This motion is now ripe for disposition.

**II.  Legal Standard**

A.  Motion to Intervene

Federal Rule of Civil Procedure 24(a)(2) provides that, upon a third party's timely motion, a court "must permit anyone to intervene who . . . claims an interest relating to the property . . . that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P.

24(a)(2). In the Fourth Circuit, "[a] party seeking to intervene as a matter of right must satisfy four requirements:

> First, the intervenor must submit a timely motion to intervene in the adversary proceeding. Second, he must demonstrate a 'direct and substantial interest' in the property or transaction. Third, he has to prove that the interest would be impaired if intervention was not allowed. Finally, he must establish that the interest is inadequately represented by existing parties.

*United States. v. B.C. Enter., Inc.,* 667 F. Supp. 2d 650, 655 (E.D. Va. 2009) (citing *Richman v. First Woman's Bank,* 104 F.3d 654, 659 (4th Cir. 1997)).

Where a proposed intervenor cannot demonstrate an entitlement to intervene as a matter of right, a court may also permit intervention by anyone who brings a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to allow permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

A motion for intervention under either Rule 24(a) or 24(b) "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). "[L]iberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible

4

with efficiency and due process.'" *Feller v. Brock,* 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C. Cir. 1967)).

B. <u>Request for Relief from Receivership Stay</u>

In order to decide whether to lift a receivership litigation stay, courts generally consider three factors: (1) whether maintaining the stay will genuinely preserve the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the timing of the motion relative to the status of the receivership; and (3) the merits of the moving party's claims. *SEC v. Wencke*, 622 F.2d 1363, 1373 (9th Cir. 1980). The moving party "bears the burden of proving that the receivership stay should be lifted." *United States v. ESIC Capital, Inc.*, 685 F. Supp. 483, 485 (D. Md. 1988).

**III. Analysis**

A. <u>Motion to Intervene</u>

Allied World argues that it should be permitted to intervene for "the limited and sole purpose of seeking a ruling that the stay of litigation against Receivership Property does not apply" to the Utah Lawsuit or, if it does apply, to seek relief therefrom. Mem. in Supp. [Dkt. 63] at 5 (internal quotations omitted). Allied World asserts that its motion for intervention is "non-conventional" and urges the Court to apply Rule 24 flexibly, even though the motion "does not fit neatly into the contours of the analytical

5

framework established by the rule." *Id.* (internal quotations and citations omitted). Rather than providing its own analysis of this framework, Allied World instead states that the "heart of the present dispute is not the question of intervention, but rather the question of whether the stay applies and, if so, whether it should be lifted." *Id.*

The parties here appear to assume that Allied World meets the criteria for intervention under Rule 24, either as of right or with the Court's permission. Recognizing the need for flexibility under Rule 24, *see WaterLegacy v. U.S.E.P.A.*, 300 F.R.D. 332, 339 (D. Minn. 2014), the Court agrees with the parties' assessments. Accordingly, the Court will grant Allied World's request to intervene for the limited purpose of seeking a ruling about whether the Receivership Stay applies to its Utah Lawsuit.

B.  Request for Relief from Receivership Stay

As a preliminary matter, Allied World argues that the Receivership Stay does not apply to its Utah Lawsuit. Mem. in Supp. [Dkt. 63] at 5-6. In support of this argument, Allied World points out that, under the terms of the Stay Lift Order, the Receivership Property includes Truland's right, title, and interest in any tort claims arising out of its work on the Project, but does not include Truland's "lead umbrella and excess umbrella" insurance policies. *Id.* at 6. Allied World asserts that the insurance policy at issue in the Utah Lawsuit is "a third-party excess liability policy" and,

6

therefore, an Excluded Asset not subject to the Receivership Order at all. *Id.*

In response to these arguments, the Receiver claims that the insurance policy at issue is part of the Receivership Property. Opp. [Dkt. 69] at 2. More specifically, the Receiver asserts that both he and the Trustee view Allied World's insurance policy as Collateral under the Stay Lift Order. *Id.* at 7. Furthermore, the Receiver claims that the Bankruptcy Court adopted this view when it decided to lift the automatic bankruptcy stay. *Id.* As a result, the Receiver believes that the insurance policy is subject to this Court's Receivership Stay. *Id.*

Assuming that the insurance policy is subject to this Court's Receivership Order, Allied World argues that "cause nevertheless exists for relief from [this Court's] stay." Mem. in Supp. at 6. First, Allied World asserts that the stay is not needed to preserve the status quo because Allied World is not seeking any relief against Truland, monetary or otherwise, that would interfere with the orderly administration of the Receivership Property. *Id.* at 7. Allied World also asserts that it will suffer substantial prejudice if it is not allowed to proceed with its Utah Lawsuit because Truland is actively seeking its insurance coverage. *Id.* Second, Allied World argues that the Receivership has been in place for roughly two and a half years, giving the Receiver ample time to understand the affairs of the entities and assets under his control.

Third, Allied World asserts that it has alleged a "colorable claim" in the Utah Lawsuit and that it should be permitted to proceed in that forum, given that the Lawsuit also involves three other insureds who are not within the jurisdiction of this Court and whose claims involve substantially similar factual and legal issues.

In his brief in opposition, the Receiver asserts that Allied World has failed to meet the test for lifting the stay in the Receivership Order. Opp. at 2, 9. First, the Receiver points out that Allied World "is seeking to disrupt the status quo without articulating any injury that would be caused by a short delay."[1] *Id.* at 9. Furthermore, the Receiver argues that the Utah Lawsuit is premature, as Truland has not yet exhausted its primary insurance policy limits and arbitration has not yet determined the exact amount and nature of Truland's liability. *Id.* at 10-11. The Receiver also argues that the Utah Lawsuit would take his focus away from the pending arbitration and potentially waste Receivership resources on "needless litigation." *Id.* at 12. Second, the Receiver claims that although the Receivership has been in place for two and a half years, it involves a "complicated winding up of ten companies that operated a business worth more than $400 million," with litigation and construction projects across the country. *Id.* at 12-13. The Receiver asserts that, given these demands, the

---
[1] The Receiver asks this Court to postpone any consideration of lifting the stay until after arbitration has concluded, given that arbitration will help to determine Truland's liability with respect to the Project and, as a result, its potential need for coverage under Allied World's insurance policy. *Id.* at 2-3.

8

timing of Allied World's motion weighs against lifting the stay. Finally, the Receiver argues that Allied World has failed to demonstrate that any of its thirteen claims in the Utah Lawsuit have merit, instead baldly asserting that they are "colorable" claims. *Id.* at 13. As a result, the Receiver asks this Court to deny Allied World's request to lift the Receivership Stay. If the Court instead decides to let the Utah Lawsuit move forward, the Receiver asks the Court to permit supplemental briefing on the issue of appropriate venue for Allied World's claims, as well as order Allied World to properly name and serve the Receiver in the Utah Lawsuit. *Id.* at 14.

In its reply brief, Allied World asserts that the Receiver has cited no authority to suggest that his opinion of what qualifies as Collateral under the Stay Lift Order trumps the express language of the Order itself. Repl. [Dkt. 76] at 3. Additionally, Allied World clarifies that the Receiver is seeking immediate funds for indemnity within the limits of Allied World's insurance policy. *Id.* at 4. Allied World believes that if it does not challenge this request, it will be subject to "extra-contractual claims and liability for additional damages." *Id.* Thus, Allied World will not agree to stay the Utah Lawsuit unless Truland relinquishes its demand for indemnity. *Id.* Finally, Allied World does not believe that the Utah Lawsuit will distract the Receiver from the pending arbitration or disturb the Receivership Property. *Id.* at 4-5. It

therefore asks this Court to deny the Receiver's request for "needless and costly discovery and briefing" on the issue of proper venue, as well as any requirement that it name or serve the Receiver in the Utah Lawsuit. *Id.* at 6.

In the instant case, the Court would be remiss if it did not point out what its Receivership Order already makes clear. The Order's intent from the beginning was to make the Receivership Property identical to the property in the Bankruptcy Court's Stay Lift Order. Receivership Order [Dkt. 9] ("[I]t being the intention of this Order that the Receivership Property *shall be identical* to the property with respect to which the Bankruptcy lifted the stay.") (emphasis added). Moreover, the Order specifically provides for how to resolve disputes like this one: "Should any dispute arise regarding the scope of the Stay Lift Order or the Excluded Assets, the Bankruptcy Court *shall have exclusive jurisdiction* to resolve [them]." *Id.* (emphasis added). Thus, the heart of the parties' dispute here—whether or not Allied World's insurance policy is part of the Collateral covered by the Receivership Stay or is an Excluded Asset—is a matter that should have been decided by the Bankruptcy Court in the first instance. Both parties recognize this, as they previously encouraged the Bankruptcy Court to decide the matter at the hearing held on January 18, 2017. Opp. [Dkt. 69], Exh. D. Although Judge Kenney granted Allied World's request for relief from the automatic bankruptcy stay following that hearing, he declined to

rule on whether the insurance policy qualified as Collateral or an Excluded Asset under the Stay Lift Order.  *Id.*

Because it is not the province of this Court to determine whether Allied World's insurance policy is Collateral or an Excluded Asset under the Bankruptcy Court's Stay Lift Order, it declines to do so today.  Accordingly, the parties are instructed to return to the Bankruptcy Court to seek a ruling on that matter.  Should the Bankruptcy Court determine that Allied World's policy is part of the Receiver's Collateral, then the parties should return to this Court for a ruling on whether the Receivership Stay applies to the Utah Lawsuit.

## IV. Conclusion

For the reasons set forth above, the Court will grant Allied World's motion to intervene.  The Court will also deny without prejudice Allied World's motion for a ruling on whether the Receivership Order applies and, if so, relief therefrom.

An appropriate order will follow.

|  | /s/ |
|---|---|
| April 27, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |