| | |
|---|---|
| From: | Juhle, Danielle Wildern <danielle.juhle@goldbergkohn.com> |
| Sent: | Thursday, June 15, 2017 6:34 PM |
| To: | Morabito, Erika; Ulrich, Kenneth |
| Subject: | RE: Response to June 13 Notice of Intent |

Erika -

As you are aware, we disagree with your reading and position as it relates to the receivership order. The receivership order authorizes the receiver to act in such capacity, but no where authorizes the receiver to use proceeds subject to the lien of a third party without that party's consent. Thus, the management agreement was executed and functions as a cash collateral agreement to provide for the consent to the use of cash subject to the terms and conditions set forth therein (including the requirement that the receiver get BMO's consent to operating budgets in order to have the authority to use BMO's cash collateral for the items set forth in such budgets). The full sentence you quoted in your email is as follows: "The Receiver shall not be obligated to contribute his personal funds in the performance of his duties here under; the Receivership is to be conducted solely from the funds arising from the Receivership Estate". Per the text, the sentence makes clear that the receiver is operating on behalf of the estate and not in his individual capacity, but certainly does not state that the receiver is authorized to use the proceeds of BMO's collateral without consent. BMO does not consent to, and has not in the past consented to, the use of the receivership funds (it's collateral) to fund the UDC litigation. Nothing in the receiver order or the management agreement allows the receiver to continue to accrue fees and expenses, without BMO's agreement.

In an effort to move toward a resolution, BMO is willing to agree to the Receiver's request for a five day extension of the notice of termination, to the close of business June 20, provided that the Receiver agree as follows:

1.) The termination notice period of the Management Agreement be reduced by the five day extension period (from 15 days to 10 days) such that if the conditions set forth in BMO's July 13, 2017 letter are not satisfied by the close of business on June 20, 2017, the effective date of termination of the Management Agreement would be June 30, 2017.

2.) The Receiver acknowledges that BMO has not consented to and shall have no obligation to pay (from its cash collateral or otherwise) any fees, costs or expenses related to the UDC litigation incurred from and after June 13, 2017.

3.) The Receiver provides to BMO an updated payables schedule, including estimates with respect to accrued and uninvoiced fees, on or before Monday, June 19, 2017 at noon (Chicago time) and proposes a distribution to BMO of all funds in excess of such amount (less a $250,000 holdback).

If the Receiver does not comply with item (3) by the time set forth therein, BMO's notice of termination shall be deemed effective, and the management agreement would terminate without any further action on June 30, 2017.

Please let us know as soon as possible if the Receiver agrees to the foregoing and we will prepare a short letter agreement to reflect the same.


Danielle Juhle | GOLDBERG KOHN LTD. | 55 East Monroe, Suite 3300, Chicago, Illinois 60603 | direct 312.863.7131 | direct fax: 312.863.7831 Visit the Goldberg Kohn website at www.goldbergkohn.com

This e-mail is subject to Goldberg Kohn's terms and conditions regarding e-mail, which are available on our web site.
Unless we have specifically stated to the contrary in writing, any discussion of federal tax issues or submissions in this communication (including any attachments) is not intended to be used, and cannot be used, for avoiding penalties under the United States federal tax laws.
-----Original Message-----
From: EMorabito@foley.com [mailto:EMorabito@foley.com]
Sent: Thursday, June 15, 2017 2:54 PM
To: Ulrich, Kenneth; Juhle, Danielle Wildern
Subject: RE: Response to June 13 Notice of Intent

Ken -

Thank for your email.  I will address your two "contingencies" in the order that you presented them.

The Receiver has no problem agreeing to your first condition outlined below.

With respect to your second condition, however, the Receiver obviously cannot agree to that now.  That said,  we expect this topic to be a subject of discussion during the extension period.  I don't think it's appropriate at this time, however, to make that a condition to a simple request for a brief extension of a notice period, particularly when we are agreeing that the effective date of termination will remain the same regardless.  Further, the extension of the notice period is intended to try and come up with a mechanism to address BMO's concerns, including trying to get BMO more comfortable that they won't have to "come out of pocket" for litigation fees and costs resulting from the UDC litigation.  The Receiver really doesn't  gain anything by the notice extension.  Without it, however, the Receiver will obviously need to take all necessary actions to protect his interests.

Finally, we disagree with the contention that the Management Agreement requires an immediate payment of $1,800,000 to BMO.  As we discussed at length with Danielle in a recent phone conversation that lasted over an hour, the Management Agreement cannot be read as an independent agreement separate and apart from the Receiver Order, particularly in areas of conflict.   In short,  the Management Agreement specifically provides that if there is a conflict between the Management Agreement and the Receivership Order, the Receivership Order will govern.  It is (and always has been) the Receiver's position that the provision in the Management Agreement that could require distributions to BMO directly conflicts with several provisions of the Receivership Order.  For instance, the Receivership Order states, among other things, that  "the Receivership is to be conducted solely from the funds arising from the Receivership Estate."   Further, to the extent that BMO is wanting to negotiate a change in the Management Agreement that would eliminate any requirement of  BMO to provide funding to the

Receivership, the Receiver would certainly need to ensure that the Receivership has adequate funds to allow him to carry out his duties under the Receiver Order.  Surely, BMO is not suggesting that it would like to use the Management Agreement as both a sword and shield.  In other words, BMO would like to rely on provisions that may require the Receiver to make a distribution to BMO.  But, BMO also wants to cut out the provision in the Management Agreement that would require BMO to cover all fees and expenses of the Receiver if there are insufficient funds in the Receivership estate to do so.   To ask such a thing of the Receiver, would be contrary to both the Management Agreement, Receiver Order, and state and federal laws governing receiverships.

Notwithstanding the foregoing,  the Receiver remains willing to negotiate the terms and conditions of an Amendment to the Management Agreement in an effort to address BMO's concerns.  To do so, however, we need the short extension to June 20, 2017 of the effective date of the notice of termination.

We look forward to hearing how the Bank would like to proceed.

Best,

Erika


Erika Morabito

Foley & Lardner LLP
3000 K Street, N.W. | Suite 600
Washington, DC 20007-5109
P 202.295.4791

View My Bio
Visit Foley.com



-----Original Message-----
From: Ulrich, Kenneth [mailto:Kenneth.Ulrich@goldbergkohn.com]
Sent: Thursday, June 15, 2017 1:27 PM
To: Morabito, Erika; Juhle, Danielle Wildern
Subject: RE: Response to June 13 Notice of Intent


Thank you for your prompt response.  BMO  will agree to the Receiver's request for a five day extension of the notice of termination, to the close of business June 20, provided that the Receiver agree as follows:

1.)    The termination notice period of the Management Agreement be reduced by the five day extension period (from 15 days to 10 days) such that if the conditions set forth in BMO's July 13, 2017 letter are not satisfied by the close of business on June 20, 2017, the effective date of termination of the Management Agreement would be June 30, 2017.

2.)    The Receiver agrees to immediate payment of $1,800,000 to BMO, which should not be an issue given the recent payments from XL, the Receiver's current cash position and the requirements of the Management Agreement.

Please let us know as soon as possible if the Receiver agrees to the foregoing and we will prepare a short letter agreement to reflect the same.


Kenneth Ulrich | GOLDBERG KOHN LTD. | 55 East Monroe, Suite 3300, Chicago, Illinois 60603 | direct 312.201.3934 | direct fax: 312.863.7434 Visit the Goldberg Kohn website at https://urldefense.proofpoint.com/v2/url?u=http-3A__www.goldbergkohn.com&d=DwIF-g&c=Rlm5WhGmPEr8srpDE4r86Q&r=9S3RDdPaO-zXjpARqqHCQCX7tvWBzO_nc43IpUphy9A&m=M49kNgQijG7Ym2puYwbEnyF9fQvnCG4Pg-Ken2cEmKw&s=pQ0Gq20c4Fa8GxxPgvzMQhir8EzK4r1PGvyue-KFiN8&e=

This e-mail is subject to Goldberg Kohn's terms and conditions regarding e-mail, which are available on our web site.
Unless we have specifically stated to the contrary in writing, any discussion of federal tax issues or submissions in this communication (including any attachments) is not intended to be used, and cannot be used, for avoiding penalties under the United States federal tax laws.

-----Original Message-----
From: EMorabito@foley.com [mailto:EMorabito@foley.com]
Sent: Thursday, June 15, 2017 8:06 AM
To: Ulrich, Kenneth; Juhle, Danielle Wildern
Subject: Response to June 13 Notice of Intent

Good morning Ken and Danielle,

Please see the attached.  We look forward to hearing back from you.

Best,
Erika


The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of

the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.